# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONELL GLEN STETLER, | ) | 1:07cv0123 DLB |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING GREENPOINT'S MOTION FOR SUMMARY JUDGMENT |
| v. | ) | (Document 41) |
| GREENPOINT MORTGAGE FUNDING INC., PATRICK MITCHELL, | ) | |
| Defendants. | ) | |

Defendant Greenpoint Mortgage Funding, Inc. ("Greenpoint") filed the instant motion for summary judgment on January 17, 2008. The Court determined that the motion was suitable for decision without oral argument pursuant to Local Rule 78-230(h).

**BACKGROUND**

Plaintiff Donell Glen Stetler ("Plaintiff") filed the instant complaint on January 22, 2007. Plaintiff names Greenpoint and Patrick Mitchell as Defendants and alleges causes of action pursuant to the Real Estate Settlement Procedure Act ("REPSA"), 12 U.S.C. § 2601, et seq., and California law.

On September 11, 2007, Plaintiff filed a second amended complaint ("SAC"). In the only cause of action against Greenpoint, Plaintiff alleges a violation of REPSA's Antikickback provision, 12 U.S.C. § 2607. Specifically, he alleges that Greenpoint paid Defendant Mitchell "a

1

fee, kickback or thing of value related to making the loans" in the form of a yield spread premium ("YSP")[1] in the amount of $3,120 on one loan and $195 on the other loan.

On January 23, 2008, the Court granted Defendant Mitchell's motion for summary judgment. The Court specifically found that the YSP did not violate RESPA, that Defendant Mitchell did not owe a fiduciary duty to Plaintiff, that the issues identified by Plaintiff were fully disclosed, and that the Good Faith Estimate did not violate RESPA. Accordingly, only the First Cause of Action as alleged against Greenpoint remains.

Greenpoint filed the instant motion for summary judgment on January 17, 2008.

Plaintiff opposed the motion on February 19, 2008. Greenpoint filed its reply on February 22, 2008, arguing that law of the case requires that its motion be granted.

**UNDISPUTED MATERIAL FACTS**

Plaintiff entered into a Mortgage Loan Origination Agreement ("Agreement") with Defendant Mitchell. Declaration of Betty Johnson ("Johnson Dec."), ¶ 4. The Agreement stated that Defendant Mitchell would enter into independent contract agreements with various lenders, and that he may be compensated by a lender. Johnson Dec., Ex. 1.

On January 20, 2006, Defendant Mitchell submitted a loan application on behalf of Plaintiff to Greenpoint for a loan in the amount of $312,000, to be secured by real property located in Bakersfield. Johnson Dec., ¶ 4; Declaration of Patrick Mitchell ("Mitchell Dec."), ¶ 6.[2] He also submitted a loan application on behalf of Plaintiff for a loan in second priority position in the amount of $39,000, to be secured by the Bakersfield property. Johnson Dec., ¶ 4; Mitchell Dec., ¶ 6. An estimated closing statement identifying all settlement charges, including the YSP, was provided to Plaintiff. Mitchell Dec., ¶ 6.

---

[1] A YSP is a fee paid by mortgage lenders to mortgage brokers based on the difference between the interest rate at which the broker originates the loan and the par, or market rate offered by the lender. Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004 (9th Cir. 2002).

[2] The Court grants Greenpoint's request for judicial notice of Mr. Mitchell's declaration filed in support of his motion for summary judgment.

At closing, Plaintiff reviewed documents, including the HUD-1, that disclosed the YSP paid to Defendant Mitchell by Greenpoint. Johnson Dec., ¶ 8, Ex. 7. Greenpoint funded the loans on January 26, 2006. Johnson Dec., ¶ 7; Mitchell Dec., ¶ 10.

As part of the loan processing, Defendant Mitchell collected financial information and other documentation necessary to complete the loan application, ordered an appraisal, provided disclosures to Plaintiff, acted as a contact point for Plaintiff, and ordered legal documents. Johnson Dec., ¶ 6.

The amount of the YSP on the first loan was $3,120. The amount of the YSP on the second priority loan was $195. Johnson Dec., ¶ 8, Ex. 7. The total principal amount of the loans was $351,000, making the YSP payments equal to .94 percent of the total principal amount. Johnson Dec., ¶ 8. Plaintiff also paid Defendant Mitchell a $500 loan origination fee, as shown on line 801 of the HUD-1, making the total compensation $3,815, or 1.08 percent of the total principal amount. Johnson Dec., ¶ 9, Ex., 7.

## DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)). As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., 809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

B.  Analysis

In the First Cause of Action, Plaintiff alleges that Greenpoint violated REPSA's Antikickback provision, 12 U.S.C. § 2607, by paying Defendant Mitchell "a fee, kickback or thing of value related to making the loans" in the form of YSPs ($3,120 on one loan and $195 on the other loan). Section 8(a) provides "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). Section 8(c)(2) provides: "Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed ...." 12 U.S.C. § 2607(c)(2).

Greenpoint seeks summary judgment based on its argument that the YSP was paid in exchange for services rendered. Along with its points and authorities, it incorporates all arguments made in Defendant Mitchell's motion for summary judgment.

This Court's finding in its order granting Defendant Mitchell's motion for summary judgment requires that Greenpoint's motion be granted. See United States v. Real Property Located at Incline Village, 958 F.Supp. 482, 487 (D.Nev.1997) (law of the case doctrine requires identical legal or factual issue already decided by the same court to be binding unless substantially different evidence is presented). The Court has already determined that the YSP did not violate RESPA, and the same result is warranted here. In its January 23, 2008, order, the Court found that the undisputed facts demonstrated that Defendant Mitchell performed numerous services in processing Plaintiff's loan and that the YSPs were paid in exchange for services actually rendered. Jan. 23, 2008, Order, at 7-8.

Although Plaintiff does not reference the Court's prior order, he attempts to avoid this result by submitting the declaration of his expert, Roseann Shannon, in support of his argument that Defendant Mitchell's compensation was grossly disproportionate to the services rendered.

5

Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1013 (9th Cir. 2002) ("The HUD test focuses on whether compensable services of the sort identified in the 1999 Statement are provided, and if they are, then on whether the total compensation (without regard to whether it comes from the borrower, the lender, or both) is reasonably related to the services provided."). According to Plaintiff's calculations and his expert's belief that the work Defendant Mitchell performed would have taken two hours, at most, Plaintiff submits that Defendant Mitchell was paid almost $2000 per hour. Declaration of Roseann Shannon, ¶ 6.

Plaintiff's argument is unconvincing, especially given this Court's rejection of his prior contention that Defendant Mitchell only performed one hour of service. In its prior order, the Court explained:

> Plaintiff's belief that Defendant Mitchell spent less than one hour in completing his loan transaction is untenable, given Defendant Mitchell's testimony to the contrary and, more importantly, the fact that the loan in question was for a different loan product and a different property than the prior loan. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). Therefore, based on the record before the Court, the YSPs were paid to Defendant Mitchell ion exchange for services actually rendered, and he is entitled to summary judgment on the first cause of action for violation of RESPA.

Jan. 23, 2008, Order, at 8.

Plaintiff's remaining arguments are irrelevant to the cause of action alleged against Greenpoint.

Accordingly, based on the law of this case, Greenpoint's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

    Dated:   **March 7, 2008**          /s/ **Dennis L. Beck**
                                                      UNITED STATES MAGISTRATE JUDGE